# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 191

State of North Dakota,                                    Plaintiff and Appellee

v.

Carrie Beth Cotton,                                      Defendant and Appellant

### Nos. 20250152-20250155

Appeal from the District Court of Foster County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Kara E. Brinster, State's Attorney, Carrington, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**State v. Cotton**
**Nos. 2025152-2025155**

**Jensen, Chief Justice.**

[¶1]   Carrie Cotton appeals from amended criminal judgments entered in four cases. She argues her sentence is illegal because the district court violated a statute prohibiting consecutive terms of imprisonment for misdemeanor offenses. We affirm the amended criminal judgments, holding an exception allowing consecutive sentences applies because Cotton committed each of her crimes as part of a different course of conduct.

I

[¶2]   The State charged Cotton in four separate cases with multiple crimes, including class A misdemeanor counts of stalking, harassment, and violating a disorderly conduct restraining order. *See* Case Nos. 16-2024-CR-00055, 16-2024-CR-00083, 16-2024-CR-00084, and 16-2024-CR-00085. The State alleged Cotton has a history of harassing "former ex relationships and people who associate with them." The State claimed Cotton sent over 100 different text messages to T.B., her ex-boyfriend, from 90 different phone numbers and that she made false statements about him on Facebook. The State also alleged Cotton harassed H.C, B.C., and T.C., a wife, husband, and their thirteen-year-old daughter, who are T.B.'s acquaintances. The State alleged Cotton, after receiving a restraining order directing her to have no contact with the family, continued to send numerous explicitly sexual and vulgar messages to each of them from fake Facebook accounts.

[¶3]   Cotton entered *Alford* pleas of guilty to all of the charges. The district court sentenced her to consecutive prison terms of 360 days on four separate counts, which included stalking T.B., and contacting H.C., B.C., and T.C. in violation of the disorderly conduct restraining order. The court ordered suspended terms of imprisonment on the remaining counts and that Cotton serve two years of probation. Cotton appeals.

[¶4]   Cotton argues her sentence is illegal because the district court sentenced her to consecutive terms of imprisonment for misdemeanor offenses. She claims the court did not conduct the requisite analysis for applying an exception allowing consecutive sentences, and even if it did, the exception cannot apply. She asserts the law requires concurrent sentences because her crimes were committed as part of a single course of conduct with one objective, which she describes as a harassment campaign against a particular group of individuals.

A

[¶5]   Generally, when a person is serving multiple terms of imprisonment, "the shorter term or the shorter remaining term shall be merged in the other term." N.D.C.C. § 12.1-32-11. The merger statute is consistent with "the common law rule that in the absence of a court order directing otherwise a sentence for crimes committed in the same state are to be served concurrently." *State v. Mees*, 272 N.W.2d 61, 66 (N.D. 1978). District courts have discretion to diverge from the merger rule and issue consecutive terms of imprisonment for felonies, *see State v. Huffing*, 2009 ND 3, ¶ 3, 763 N.W.2d 799, but the merger statute limits the court's authority for misdemeanors as follows:

> When sentenced only for misdemeanors, a defendant may not be consecutively sentenced to more than one year, except that a defendant being sentenced for two or more class A misdemeanors may be subject to an aggregate maximum not exceeding that authorized by section 12.1-32-01 for a class C felony if each class A misdemeanor was committed as part of a different course of conduct or each involved a substantially different criminal objective.

N.D.C.C. § 12.1-32-11(3). The two exceptions in the merger statute are alternative grounds for allowing otherwise prohibited consecutive sentences. *See Glasser v. State*, 2023 ND 111, ¶ 18, 992 N.W.2d 7 ("Because we conclude the three convictions sentenced consecutively were part of different courses of conduct, we need not reach the question of whether they involve a substantially different criminal objective.").

[¶6]   The test for the first exception, offenses committed as part of a different course of conduct, "turns in significant part on whether they occur at the same time and place." *Glasser*, 2023 ND 111, ¶ 15; *see also State v. Rivera*, 2018 ND 15, ¶ 8, 905 N.W.2d 739. "[I]f each crime requires evidence or proof of a fact different from or additional to the proof required to convict of the other, the crimes were likely of a different course of conduct." *Glasser*, ¶ 15. General similarity between the "method and motive" of different offenses is not sufficient to make them part of the same course of conduct. *Id.* ¶ 18; *see also Rivera*, ¶ 8.

[¶7]   The test for the second exception, offenses involving a substantially different criminal objective, relates to the "elements of the crimes." *State v. Salveson*, 2006 ND 169, ¶ 7, 719 N.W.2d 747. We have previously noted the following:

> [M]ultiple class A misdemeanor offenses may be deemed by the sentencing court to involve substantially different criminal objectives if they do not fall under one of the following three categories: (1) one offense is an included offense of the other; (2) one offense consists of a conspiracy, attempt, solicitation, or other form of preparation to commit, or facilitation of, the other; or (3) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

*Id*. ¶ 6; *see also State v. Ulmer*, 1999 ND 245, ¶¶ 9-10, 603 N.W.2d 865 (explaining these three categories, taken from drafters' comments to a "near verbatim" federal provision, offer "a bright-line definition for determining when multiple offenses involve different criminal objectives").

[¶8]   The "different course of conduct" and "different criminal objective" exceptions in the merger statute present issues of both fact and law. *Glasser*, 2023 ND 111, ¶ 13. Findings of fact are reviewed under the clearly erroneous standard. *Id.* "A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* Interpretation of

the meaning of the exceptions, and how they apply to the facts, is a legal issue reviewed de novo. *Rivera*, 2018 ND 15, ¶ 4; *see also Ulmer*, 1999 ND 245, ¶ 6.

B

[¶9]   Cotton argues her convictions are part of a single course of conduct, which she describes as a "coordinated harassment campaign" employing "identical methods over overlapping timeframes" to harass the victims. She asserts her conduct "lacks the temporal and spatial separation that would justify consecutive sentencing under the merger statute."

[¶10] We have explained crimes are not necessarily part of the same course of conduct simply because they were committed close in time or by similar means. For example, in *State v. Glasser*, a criminal defendant was given three consecutive sentences for forging three character reference letters for use at a sentencing hearing. 2023 ND 111, ¶ 3. He argued his crimes were part of the same course of conduct, which was forging letters to obtain more lenient sentences. *Id.* ¶ 18. We rejected his argument reasoning each offense "required proof of a different element or fact—specifically, the name of the victim whose name was forged." *Id.* Similarly, in *State v. Rivera*, a criminal defendant was given consecutive sentences for crimes relating to possessing or creating sexual images and surreptitious intrusion. 2018 ND 15, ¶ 3. He argued his crimes were part of the same course of conduct "because his purpose was to collect sexual images of multiple victims and he did so in a similar manner in similar retail locations continuously over a span of weeks[.]" *Id.* ¶ 9. We also rejected his argument reasoning each offense "involved different crimes committed against different victims on different dates." *Id.*

[¶11]  Here, like in *Glasser* and *Rivera*, the offenses are not part of the same course of conduct despite the similar methodology Cotton employed and the proximate timeframe. The factual basis for the charges, as Cotton described them in her petitions to file *Alford* pleas, described different criminal acts on different dates against different victims. They state:

- "That on or about September 18, 2022, to February 14, 2023, in Foster County, State of North Dakota[,] I, Carrie Beth Cotton,

4

did commit the offense of **Stalking** . . . . Specifically, the evidence will show that I engaged in a course of conduct directed at **T.B.** by sending a letter, text messages, and Facebook messages during the dates in question, which harassed and intimidated **T.B.** and served no legitimate purpose."

- "That on or about January 15, 2023, in Foster County, State of North Dakota[,] I, Carrie Beth Cotton, did commit the offense of **Violation of a Disorderly Conduct Restraining Order** . . . . Specifically, the evidence will show a Facebook message to **H.C.**, a protected party."

- "That on or about January 6, 2023, in Foster County, State of North Dakota[,] I, Carrie Beth Cotton, did commit the offense of **Violation of a Disorderly Conduct Restraining Order** . . . . Specifically, evidence will show a Facebook message to **B.C.**, a protected party."

- "That on or about February 12, 2023, in Foster County, State of North Dakota[,] I, Carrie Beth Cotton, did commit the offense of **Violation of a Disorderly Conduct Restraining Order** . . . . Specifically, the evidence will show a Facebook message to **T.C.**, a protected party."

(Initials bolded for emphasis.) Because we conclude as a matter of law that these crimes are not part of the same course of conduct, we need not address the alternative exception relating to whether they involve a substantially different criminal objective.

[¶12] Cotton also argues her sentence is illegal because the district court did not analyze the merger statute or make factual findings about her crimes. However, Cotton has not identified any disputed facts. Her sole contention is that the statutory exception does not apply to her conduct. Whether facts meet a legal standard is a question of law. *In re Estate of Lindberg*, 2024 ND 10, ¶ 16, 2 N.W.3d 220. Although the court did not expressly analyze the issue Cotton raises on appeal, we will not vacate a criminal sentence, which is purely a matter of discretion, unless the court "acted outside the limits prescribed by statute or substantially relied on an impermissible factor in determining the severity of the

sentence." *State v. Larsen*, 2023 ND 144, ¶ 5, 994 N.W.2d 194 (quoting *State v. Gonzalez*, 2011 ND 143, ¶ 6, 799 N.W.2d 402). As we have explained, the court's consecutive sentences are not outside the bounds of the law because the exception for crimes committed as part of a different course of conduct applies.

[¶13] Cotton also claims her sentence is illegal because it creates a potential for a future merger violation. In her words, "Since the judgments do not specify that the suspended sentences within each case must run concurrently, a future court on resentencing following a probation violation could have discretion to impose them consecutively[.]" If a resentencing were to occur, the district court could impose any sentence that was available at the time of Cotton's initial sentencing. *See* N.D.C.C. § 12.1-32-07(6) (stating the court "may revoke the probation and impose any other sentence that was available . . . at the time of initial sentencing or deferment"); *see also State v. Nelson*, 2024 ND 55, ¶¶ 5-6, 5 N.W.3d 554 (explaining "that when a probationer falters during probation, the district court may impose any sentence that was available during the original sentencing"); *State v. Rinde*, 2024 ND 33, ¶¶ 8-9, 3 N.W.2d 165 (discussing a 2021 amendment to N.D.C.C. § 12.1-32-07(6), which previously restrained district courts to imposition of the sentence initially imposed but suspended). Cotton's question is hypothetical, may or may not occur, and would require this Court to give an impermissible advisory opinion. *See, e.g., Richland Cnty. Water Res. Bd. v. Pribbernow*, 442 N.W.2d 916, 919 (N.D. 1989) ("We may not give purely advisory opinions."). We decline to answer the potential question raised by Cotton.

III

[¶14] Cotton's sentence is not illegal. The general rule against consecutive terms of imprisonment for misdemeanor offenses does not apply because Cotton committed each of her crimes as part of a different course of conduct. The amended criminal judgments are affirmed.

[¶15] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers

Jerod E. Tufte
Douglas A. Bahr